UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAMELA J. HOKAMP,

    Plaintiff,        CASE NO. 21-CV-1125

v.

CHIEF MATTHEW MILLER,
DEPUTY TERI WEGNER,
DEPUTY TOM KLEMKE,
DEPUTY DANIEL HEINRICH,
DEPUTY ERIC HEINE,
DEPUTY SCOTT YAMBOR,
DEPUTY MATT KANTERS,
NURSE AMANDA LENZ, and
NURSE SARAH LUEBKE,

    Defendants.

---

**DEPUTY TERI WEGNER, DEPUTY TOM KLEMKE, DEPUTY DANIEL HEINRICH, DEPUTY ERIC HEINE, DEPUTY SCOTT YAMBOR, DEPUTY MATT KANTERS, NURSE AMANDA LENZ AND NURSE SARAH LUEBKE'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

  Deputy Teri Wegner, Deputy Tom Klemke, Deputy Daniel Heinrich, Deputy Eric Heine, Deputy Scott Yambor, Deputy Matt Kanters, Nurse Amanda Lenz and Nurse Sarah Luebke (the "County Defendants"), by their attorneys, MUNICIPAL LAW & LITIGATION GROUP, S.C., hereby respectfully submit this Response Brief in Opposition to Plaintiff's Motion for Summary Judgment.

## **INTRODCUTION**

  Pro se Plaintiff Pamela Hokamp ("Hokamp") filed a federal civil rights action arising from her arrest and detention at the Jefferson County Jail ("Jail") on July 22, 2019 involving Village of Lake Mills Police Chief Matthew Miller, several Jefferson County Sheriff's Office deputies

1

(Deputies), and two Jail nurses. (Dkt. #1). Her Complaint alleged false arrest, excessive force, failure to intervene and failure to provide medical care, although in each instance she confusingly fails to identify which defendant she is targeting for which claim. (Dkt. #1).

Hokamp filed summary judgment in June and repeated the filing in October, at Dkt. No. 41. In her October filings, she has thrown into this stewpot various documents which she believes support her Motion for Summary Judgment, leaving it to the defendants and Court to discern and decipher their admissibility and materiality. (Dkt. ## 41, 42, 44, 45, 46). These documents were filed on numerous days after the deadline to submit dispositive motions as set by the Court's Scheduling Order. (Dkt. #25).

Her summary judgment focuses on Chief Miller, the arresting deputies, and the Jail deputies, not the nurses she sues. She makes no reference to any of the actions of the nurses she sues. Indeed, she admitted that she should not have sued one of the nurses, Dkt. #36, ¶7. Whether by waiver or forfeiture or by the reasons set forth in the County's Motion for Summary Judgment as it relates to the nurses, the nurses should be dismissed.

For the reasons outlined in the County Defendants' Brief in Support of Summary Judgment, the undisputed facts in this case reveal each defendant acted within the contours of the Fourth Amendment and/or is otherwise entitled to qualified immunity for their actions.

## ARGUMENT

I. **HOKAMP DOES NOT HAVE A VIABLE FOURTH AMENDMENT CLAIM UNDER 42 U.S.C. § 1983.**

Plaintiff states she was not aware of the Wood County citations or warrants against her at the time of her arrest on July 22, 2019, but this is of no consequence and does not provide her with any legal recourse against the County Defendants. The Seventh Circuit and other circuits have held that there is no violation of the Fourth Amendment when law enforcement officers fail to

provide or show a copy of a warrant to an arrestee or fail to have a copy of the warrant on with them while they execute the warrant. *Johnson v. Gullickson*, 2022 WL 2387350, at *2 (7th Cir. 2022). The Fourth Amendment "does not require officers to carry warrants with them." *United States v. Cazares-Olivas*, 515 F.3d 726, 729 (7th Cir. 2008); *see also United States v. Turcotte*, 558 F.2d 893, 896 (8th Cir. 1977) (finding that no actionable cause of action existed under 42 U.S.C. § 1983 where an arresting officer did not have a physical copy at the time of plaintiff's arrest).

Here, Hokamp had a facially valid arrest warrant issued by the Wisconsin Rapids Police Department for Disorderly Conduct and Obstructing an Officer, which was issued by the Wisconsin Rapids Police Department on July 16, 2019. (Dkt. #36, ¶¶ 2-4). Chief Miller was aware of these citations prior to initiating his second contact and arrest of Hokamp and had sufficient probable cause to arrest Hokamp. (Dkt. #36, ¶5). Hokamp's allegations that she was not provided with a copy of the warrant or aware of the underlying citations against her does not make the warrant invalid or her arrest unconstitutional and Hokamp has not cited to any caselaw or statutory provision which supports any claims of unlawful or false arrest under the Fourth Amendment.

Further, Hokamp does not dispute that she was charged and convicted of two misdemeanor offenses of Disorderly Conduct and Resisting or Obstructing an Officer related to her actions during her arrest. (Dkt. #36, ¶36 and Dkt. #42). As such any claims for false arrest conflict with the Supreme Court's rulings in *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994) because her various allegations about the validity of the warrant and grounds for her arrest are inconsistent with and would undermine her convictions. Hokamp's false arrest claims therefore fails for this independent reason under the *Heck* doctrine.

## II. HOKAMP'S CLAIMS AGAINST ALL DEFENDANTS REQUIRE DISMISSAL OF CERTAIN DEFENDANTS FOR LACK OF PERSONAL INVOLVEMENT.

A plaintiff must allege in their complaint that the individual was involved in the constitutional deprivation at issue. Civil rights lawsuits under 42 U.S.C. § 1983 against individuals "require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion County*, 327 F.3d 588, 594 (2003). Pleading against "all defendants" without any specificity as to who did what, as Hokamp does here, is insufficient to allege the personal involvement necessary to state a claim. Such pleading style heightens the personal involvement deficiency in the Complaint given the separate claims involved in this lawsuit, the number of parties, different locations and span of time. *See Brown v. Ill. Dep't of Public Aid*, 318 F. Supp. 2d 696, 700 (N.D. Ill. 2004) (dismissing a § 1983 claim where plaintiff's "allegations of unequal treatment [were] made generally against all defendants, [and] fail[ed] to allege the element of personal involvement necessary for individual liability under § 1983"). "Each individual defendant can be liable only for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group." *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987). Hokamp shotgun approach to pleading violates this cardinal rule.

For the same reasons as set forth in the County Defendant's moving Brief in Support of their Motion for Summary Judgment, which the County Defendants incorporate here, Hokamp has not pled allegations with the requisite specificity such that certain claims and allegations against the County Defendants must be dismissed. (Dkt. #39, pp. 3-6).

Further, Hokamp also made clarifying statements in her recent summary judgment filings that indicate a lack of personal involvement with regard to certain claims. For example, she clarifies that "[f]ormer Chief Miller applied force to straighten out right foot breaking the toe at first joint." (Dkt. #42; Dkt. #44; Dkt. #46, p. 90). As such, none of the County Defendants has the requisite personal involvement for any of her toe-related claims. (See also Dkt. #36 ¶¶ 14-15). As

another example, she asserts Deputy Heine threatened her with "unwanted physical contact" such that his words constituted "physical assault" when he asked Hokamp to change her clothes and she refused to do so. (Dkt. Dkt. #41; #42; Dkt. #44, p. 2). Hokamp does not cite any legal authority supporting such claims against Deputy Heine, but in any event it is clear Deputy Heine lacks personal involvement as to any other claim. In all other respects, Hokamp fails to show the requisite personal involvement of any particular County Defendant as it relates to a viable cause of action.

### III. HOKAMP'S FOURTH AMENDMENT EXCESSIVE FORCE AND FAILURE TO INTERVENE CLAIMS MUST BE DISMISSED BECAUSE REASONABLE FORCE WAS USED.

For the same reasons as set forth and argued in the County Defendants' Brief in Support of its Motion for Summary Judgment (Dkt. #39) Hokamp's Fourth Amendment claims of excessive force and Failure to Intervene must be dismissed because a reasonable amount of force was used. Her initial complaint and pleadings and her various summary judgment pleadings set forth her allegations that excessive force was used during the initial physical contact, taser deployment, movement from the front stoop of her home and placement in the prone position on the front walkway, and placement in the restraint chair at the Jail by the Defendants. Her continued resistance necessitated escalated use of force by the arresting officers.

The legal standards governing claims of excessive force are analyzed only under the Fourth Amendment and were set forth in the County Defendants' opening Brief at Dkt. #39, pp. 7-8.

#### a. Initial Physical Contact.

Deputy Heinrich was the only County who initially went hands-on with Hokamp, but his actions were justified and reasonable and did not violate the Fourth Amendment given the circumstances and amount of force used. When a law enforcement officer determines there is

5

Case 2:21-cv-01125-JPS   Filed 11/16/22   Page 5 of 17   Document 53

probable cause for an arrest, there is nothing excessive about that officer grabbing that person to effect that arrest. *See Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). As noted, above, Hokamp had valid warrants for her arrest from the Wisconsin Rapid Police Department, which were verified by Chief Miller. (Dkt. #36, ¶¶4, 5, 8).

Hokamp was advised by Chief Miller that she was under arrest for the warrants issued by the Wisconsin Rapids Police Department and needed to come with them to the Jail, but rather than comply with Chief Miller or the Deputies, she began to raise her voice and state she would not be taken to the Jail. (Dkt. #36, ¶9). Rather, she then attempted to enter her residence by placing her hand on the door handle. (Dkt. #36, ¶9). Only after she attempts to enter her home do Chief Miller and Deputy Heinrich each secure Hokamp's wrists to prevent her from doing so and during this time Hokamp is instructed not to resist and told she cannot go back into her residence. (Dkt. #36, ¶¶10-11). This initial physical hands-on contact continued as Hokamp continued to actively resist by yelling at the officers and by pulling or leaning her body back and using deadweight tactics to avoid handcuffing. (Dkt. #36, ¶ 11). Additionally, Hokamp does not allege that any sort of body strikes, punches or otherwise were employed during this initial physical contact. In fact, Hokamp's pleadings are largely devoid of specific allegations related to this initial physical contact and she does not contest that during this time she was attempting to enter her home and then resisted arrest. (Dkt. #36, ¶¶9-11).

In *Outlaw v. Village of Shorewood*, the plaintiff raised excessive force claims related to her arrest and law enforcement officer's use of force by means of grabbing plaintiff's arm while being arrested for a municipal citation related to retail theft. 2021 WL 424224 *1-2 (E.D. Wis. 2021).

6
Case 2:21-cv-01125-JPS   Filed 11/16/22   Page 6 of 17   Document 53

There, the officer gave the plaintiff the opportunity to comply with citations and even avoid arrest, but she refused and when the officer grabbed plaintiff's arm to arrest her, plaintiff pulled away and a scuffle ensued as plaintiff tried to escape the officer. *Id.* The officer used a takedown maneuver after plaintiff's mother become involved in the scuffle, and eventually compliance was secured. *Id.* at *2. The court noted that it made no difference that plaintiff was charged with a non-criminal ordinance violation because law enforcement officers "may arrest a person for even the most minor offenses" and "[w]hen an officer has probable cause to arrest a person, there is nothing excessive about the officer grabbing that person to affect the arrest." *Id*. at *4. Under the totality of the circumstances, the officer's actions were reasonable under the Fourth Amendment. *Id*. at 5.

While Hokamp states in her Statement of Disputed Facts that the "officers did not follow use of force continuum, which is not physical, non threatening commands" (Dkt. #42), this is clearly refuted by the video evidence where Hokamp was told not to resist arrest on numerous occasions. (Dkt. #36, ¶10). This occurs almost simultaneously after the initial securing of her wrists when she attempted to enter her home and prior to any escalated use of force or further resistance by Hokamp, refuting any contention that she asserts that non threatening commands were not used. This sequence of events is captured clearly on the body camera footage from Deputies Heinrich and Klemke, as well as the Ring Doorbell footage from the residence, which the parties agree accurately depicts the events. (Dkt. #36, ¶6). *Outlaw* is instructive here regarding the initial contact, as it demonstrates the grabbing Hokamp's wrists to arrest her when a valid warrant for her arrest existed was reasonable under the Fourth Amendment. Additionally, claimed deviations from internal policies and procedures is immaterial to the Fourth Amendment analysis. See *Oliver v. Flahive*, 2022 WL 309311, at *1 (E.D. Wis. 2022) ("The Court agrees. Violations of internal rules are not evidence of a constitutional violation. *Thompson v. City of Chicago*, 472 F.3d

7

444, 454–55 (7th Cir. 2006).") Any claims stemming from this initial contact should be dismissed as such force was not excessive and was reasonable.

### b. Taser Deployment.

For the same reasons elaborated on in the County Defendants' Brief in Support of their Motion for Summary Judgment, Deputy Klemke's use of the taser was reasonable and not an excessive use of force which would violate the Fourth Amendment. The County Defendants incorporate their arguments as set forth in their Brief in Support. (Dkt. #39, pp. 10-11).

Buried in the various documents Hokamp filed with the Court as exhibits to her summary judgment filings, (Dkt. #46, p. 90), she makes conclusory allegations as to the nature and use of tasers, their functional capabilities and the distance they should be deployed. However, Hokamp does not support these contentions with any admissible evidence, she is not a police practices expert and further speculates the taser was used to intimidate and traumatize her. Hokamp references portions of the Jefferson County Sheriff's Office Policy and Procedure related to Use of Force (Dkt. #46, pp. 56-78), therein noting justification for the use of "an ECD [electronic control device] is active resistance or the threat of active resistance from a subject or subjects" *Id.*, p 67. Even assuming the policy was violated, such violation is not evidence of a constitutional violation. *Oliver v. Flahive*, 2022 WL 309311, at *1 (E.D. Wis. 2022).

In her summary judgment filings, Hokamp alleges she was tasered twice at the direction of Chief Miller. (Dkt. ## 41, 44). This is readily disputed by the video evidence in the record in this matter. Chief Miller did not order Deputy Klemke to tase Hokamp and Klemke did not tase Hokamp twice. (Dkt. #36, ¶¶12-13; Dkt. #37, Exhibit 9). Plaintiff does not dispute that she continued to resist and vocalize her agitation after Deputy Klemke announced that the taser would be used, prior to its deployment and that she continued to resist arrest after she was tased and

attempted to remove the taser probes. (Dkt. #36, ¶¶12-13). "Authorities must be allowed 'to graduate their response to the demands of any particular situation.'" *United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985) (internal citations omitted). Hokamp's behavior prior to deployment did not indicate an intent to comply with the arresting officers and she continued her active resistance and belligerence toward them, requiring a reasonable and necessary escalation in force to the use of the taser.

The deployment of the taser was objectively reasonable given Hokamp's active resistance, actions, demeanor, refusal to cooperate and prior attempts to enter her residence. Her behavior is not the only relevant consideration making the deployment of the taser reasonable as shown in the video; in addition, the officers were attempting to effectuate an arrest on a small, covered porch elevated about a foot over the front walkway and in close proximity to the door, walls and each other's body. Since verbalization and physical hands-on escort and efforts were unsuccessful, it was reasonable to use the taser to gain compliance and, upon doing so, Deputy Klemke made the correct decision to discontinue its use.

### c. Relocation of Hokamp to Front Walkway from Front Stoop.

Restraining a person in a prone position is not, in and of itself, excessive force when the person restrained is resisting arrest. *Mayard v. Hopwood,* 105 F.3d 1226, 1227–28 (8th Cir.1997) (holding that officers' actions were objectively reasonable as a matter of law when they handcuffed resisting individual's wrists, placed hobble restraints on individual's legs and placed individual face down in squad car). Here, Hokamp was placed in a prone position on the front walkway because there was more room to maneuver and she continued to resist arrest and placement in this position best allowed the Chief Miller and Deputies Heinrich and Klemke to secure her. Attempts to gain Hokamp's compliance through speaking with her, wrist restraints, orders not to resist and use of

the taser had failed prior to this point such that moving her to the prone position to gain compliance was the reasonable next step for the arresting officers.

Further, Hokamp's own pleadings contradict themselves with regard to her movement from the front stoop to the walkway. In her initial complaint she stated that while she was moved her feet did not touch the ground (Dkt. #1, p. 4), but then states there were marks left on the pavement by being dragged. (Dkt. #1, p. 4; Dkt. #42, p. 1). However she wishes to recharacterize events, the video shows Hokamp's resistance (including the use of deadweight tactics) necessitated the move of Hokamp to the prone position to secure her.

Any further contact with Hokamp by Deputies Heinrich and Klemke was incidental to their attempts to secure her and were routine efforts of control in such circumstances where an arrestee is actively resisting law enforcement officers pursuant to a valid warrant. Indeed, Hokamp does not allege that Deputies Klemke or Heinrich employed body strikes, kicks or other acts on her while she was in the prone position. This minimal use of force delineates the Deputies behavior from being excessive, as the Seventh Circuit has noted "it is one thing to use force in subduing a potentially dangerous or violent suspect, and quite another to proceed to gratuitously beat [them]." *Cf. Frazell v. Flanigan,* 102 F.3d 877, 885 (7th Cir.1996). Here, the Deputies actions cannot be characterized as a gratuitous beating or a beating of any kind.

Hokamp also asserts Deputy Heinrich "was kneeling on Plaintiff [sic] back" as shown in the video of the events, but this is plainly refuted by the video evidence in the record, as at no point does Deputy Heinrich or Deputy Klemke appear to place their knee on Hokamp's back, nor does she say that she is having any trouble breathing, as she also alleges in her summary judgment filings. (Dkt. #42; See Dkt. #34, Exh. 8 and Exh. 9 from 10:33:32 through 10:35:10); *See Scott v. Harris,* 550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which

is blatantly contradicted by [the video footage], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a summary judgment motion;" it should instead "view[] the facts in the light depicted by the videotape."). Such restraints continued to be necessary when Hokamp did not immediately comply when the officers instructed her to place her hands behind her back while prone. Hokamp was not kept in the prone position for any longer than necessary. As soon as Hokamp was placed in handcuffs she was assisted off of the ground by the officers and moved to the squad vehicle. *Id*.

Throughout this sequence of events, there is no evidence that the officers used any more force than they would usually use on any person subject to an arrest in that situation. Hokamp's statement during that interaction that she had a shoulder problem and her claims that there was excessive force because of her shoulder ailment are not dispositive because the reasonableness of force under the Fourth Amendment is evaluated from the point of view of the officer, not from that perspective of the individual subjected to force. *Graham*, 490 U.S. at 396. From the point of view of the arresting officers, the decision to move Hokamp several feet away from the front doorway to an open area and to get her to a prone position for handcuffing was not objectively unreasonable *when they had not yet received any information that she had a shoulder injury or suffered from any other physical or mental ailment*. Her in-the-moment excited utterance about her shoulder does not turn their decision-making in the moment (to move her to the open area by the front walkway) into a constitutional offense. The officers' in-the-moment judgment, occurring in "circumstances that [were] tense, uncertain, and rapidly evolving," *Graham*, 490 U.S. at 395, does not offend the Fourth Amendment.

Deputies Klemke and Heinrich used minimal force in the process of moving Hokamp from the front stoop to the walkway and placing her in the prone position. This was only done after

11
Case 2:21-cv-01125-JPS   Filed 11/16/22   Page 11 of 17   Document 53

Hokamp continued to resist, employed deadweight resistance tactics, used belligerent language and refused to comply with their commands.

### d. Restraint Chair at the Jail.

Hokamp's Complaint also alleges "defendants" used excessive force when transferring and by placing Hokamp in a restraint chair. (Dkt. #1, p. 3). In her summary judgment filings she also alleges she was kept in the restraint chair for "over five hours," was suspended in the air while transferred into the restraint chair and was improperly placed in the restraint chair when she did not pose a threat to the County Defendants and that County Defendants did not follow their policy and procedure before placing Hokamp in the chair. (Dkt #41, 42).

After she was taken into custody, Hokamp remained belligerent and agitated, cursing at Deputies Heinrich and Klemke while being transported to the Jail and declaring she would yell rape if anyone at the Jail touched her. (Dkt. #36, ¶19). Hokamp does not dispute she acted in this manner. Indeed, when Deputy Yambor attempted to calm Hokamp down and speak with her at the squad car, she continued to raise her voice and behave belligerently. *Id*, ¶21. When Deputy Yambor attempted to remove her from the squad car she physically resists and yelled "rape." *Id.*, ¶21. At this point, her behavior and resistance led the County Defendants to believe Hokamp needed to be placed in a restraint chair. The Jail deputies were not constitutionally required to wait and hope that Hokamp might eventually cooperate. *See Husnik v. Engles,* 495 F. App'x 719, 722 (7th Cir. 2012) ("In any event, because [the inmate] had freed his arm from the restraints, he posed an imminent threat to the officer's safety; waiting and hoping for him to relax was not an option."). The Seventh Circuit has also noted:

> When an order is given to an inmate *there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force.* While . . . it was

> suggested that rather than not seek to enforce order, *it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.*

*Colon v. Schneider*, 899 F.2d 660, 668-69 (7th Cir. 1990) (emphasis added). Courts have therefore allowed the use of a restraint chair in the jail setting for uncooperative and resisting detainees, see, e.g., *Cibulka v. City of Madison*, 448 F. Supp. 3d 1002, 1024 (W.D. Wis. 2020), aff'd, 992 F.3d 633 (7th Cir. 2021) ("Katzenmeyer resorted to the restraint chair only because Todd refused orders to cooperate, stand up, and walk out of the booking area to a segregation cell. If Todd had complied with orders to walk to the segregation cell, a restraint chair would not have been necessary."), and even when such person is perceived as being a security problem.

For the reasons explained in the County Defendants' Brief in Support of their Motion for Summary Judgment, incorporated here, Hokamp's behavior even after her initial placement resulted in the reasonable determination that she remain secured therein until she calmed down. (Dkt. #39, pp. 14-16). While Hokamp argues she remained in the restraint chair for longer than two hours, she testified she has no personal knowledge on the matter. (Dkt. #37-21, pp. 80:16-81:12). While the record evidence and undisputed facts support a finding that Hokamp was placed in the restraint chair for less than two hours, (Dkt. #36, ¶¶ 26, 32), even if she was placed in the chair for the length of time she alleges, that fact alone is not dispositive, and Hokamp's behavior and actions warranted continued placement therein. Courts have routinely held that where legitimate penological reasons support an extended placement of an detainee in a restraint chair and the detainee is monitored by medical staff, as was the case here (Dkt. #36, ¶¶25, 26, 31, 32), extended detention for period of even eighteen hours. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (abrogated on other grounds).

While Hokamp makes sweeping allegations that policy and procedure was not followed in her placement in the restraint chair, her allegations are misconstrued. Jefferson County Sheriff's Office Policy 234A explicitly states "Deputies shall be authorized to determine that use of the restraint chair is necessary" and the restraint chair may be used for an "inmate who is temporarily out of control." (Dkt. #46, p. 32). Despite her continued belligerence upon arrival at the Jail, Deputy Yambor did attempt to speak with Hokamp when removing her from the squad vehicle, yet she again resisted and raise her voice, yelling "rape" as he attempted to remove her from the vehicle. (Dkt. #36, ¶¶21, 22). Hokamp's level of agitation and refusal to speak calmly with the County Defendants or comply with their requests created a reasonable belief that use of the restraint chair was necessary. Further, the violation of a jail or prison rule "is not, by itself a violation of the Constitution." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir.2003) (citations omitted).

Lastly, when Hokamp alleges she was "suspended in the air" and placed in the restraint chair, such allegations are clearly disputed by the video evidence in the record and should not be accepted. *Scott,* 550 U.S. at 381. The video evidence shows Hokamp was escorted to the restraint chair and assisted into the restraint chair by Deputy Yambor and Deputy Heine. (Dkt. #36, 22). No actions of the County Defendants during this time could be reasonably construed as an excessive use of force while transferring Hokamp from the squad car to the restraint chair.

### e. Hokamp Cannot Establish Any County Defendant Failed to Intervene in Violation of her Fourth Amendment Rights.

As noted in the County Defendants Brief in Support of their Motion for Summary Judgment, Hokamp has completely failed to sufficiently allege or identify which of the County

Defendants failed to intervene, such that any claims on that basis must be dismissed for lack of personal involvement. (Dkt. #39, p. 6). She has not made any clarifying statements or arguments to such claims in her various summary judgment fillings and her claims must be dismissed for this reason alone, as it is her burden to connect the dots on summary judgment of who did what. Further, any claims for failure to intervene cannot be sustained where, as here, for the reasons explained above, there is no underlying constitutional violation. See *Fillmore v. Page*, 358 F.3d 496, 505-506 (7th Cir. 2004).

Even if there were an underlying constitutional violation, Hokamp cannot succeed on a failure to intervene claim for the reasons set forth in the County Defendant's opening Brief. (Dkt. #39, pp. 16-17.

Hokamp merely alleges that "the walls were lined with other deputies or correctional officers who did not intervene" when Hokamp was removed from the squad car. (Dkt. #46, p. 90). First, Hokamp makes no allegations as to who should have intervened, or at what point they should have intervened or that the County Defendants had reason to know excessive force was being used. Additionally, Hokamp cannot show that the County Defendants should have had any reason to know that her constitutional rights were bring violated by an unlawful arrest, unlawful use of force during her arrest, or unlawful use of the restraint chair while at the Jail. In sum, it is her burden to show the particular constitutional violation at the particular point in the sequence of events and to tie that to another particular Defendant's "realistic opportunity" to prevent such violation.

IV. **HOKAMP WAS PROVIDED MEDICAL CARE FOR HER COMPLAINTS AND REPEATEDLY REFUSED MEDICAL CARE SUCH THAT HER MEDICAL CARE CLAIMS MUST BE DISMISSED.**

The County's Brief in Support of Summary Judgment and undisputed facts reveal one of the nurses (Nurse Lenz) was admittedly wrongly sued by Hokamp. As to the other, Nurse Luebke,

15
Case 2:21-cv-01125-JPS   Filed 11/16/22   Page 15 of 17   Document 53

Hokamp refused a medical assessment and, once she calmed down, received medical attention which did not offend the constitution. See Defendants' Brief Dkt. #36, pp. 17-22. In her motion, Hokamp does not develop her claim against Nurse Luebke in any way. "Although we liberally construe pro se filings, liberal construction does not extend so far as developing and researching legal arguments for litigants proceeding without counsel." *Watson v. Home Depot USA, Inc.*, 101 F. App'x 178 (7th Cir. 2004). Therefore, whether viewed through the lens of waiver or forfeiture, or based on the undisputed facts and legal standards governing Nurse Luebke, this claim should be dismissed.

## V. THE COUNTY DEFENDANT'S ARE ENTITLED TO QUALIFIED IMMUNITY.

In their Answer and Motion for Summary Judgment, the Defendants asserted qualified immunity and explained how their actions should be protected thereunder. Sections I and III above explain how the deputies acted reasonably and within the parameters of various controlling legal precedents. Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all, and this court is respectfully requested to do so here. See *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Hokamp offers no legal argument and no legal authority to show the County Defendants at any time for any action violated clearly established law. Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. See *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010). To be clearly established, a right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012) (internal quotations and brackets omitted). This is a high bar, and one that Hokamp has not even tried to pass.

## **CONCLUSION**

For the reasons explained above, Deputy Teri Wegner, Deputy Tom Klemke, Deputy Daniel Heinrich, Deputy Eric Heine, Deputy Scott Yambor, Deputy Matt Kanters, Nurse Amanda Lenz and Nurse Sarah Luebke, respectfully ask the Court deny Plaintiff's Motion for Summary Judgment and to grant their Motion for Summary Judgment (Dkt. #38) and dismiss this lawsuit.

Dated this 16th day of November, 2022.

        **MUNICIPAL LAW & LITIGATION GROUP, S.C.**

        Attorneys for Deputy Teri Wegner, Deputy Tom Klemke, Deputy Daniel Heinrich, Deputy Eric Heine, Deputy Scott Yambor, Deputy Matt Kanters, Nurse Amanda Lenz, and Nurse Sarah Luebke

        By:   */s/ Electronically signed by Remzy D. Bitar*
            REMZY D. BITAR
            State Bar No: 1038340
            LUCAS C. LOGIC
            State Bar No. 1115461

            P.O. ADDRESS:
            730 N. Grand Avenue
            Waukesha, WI 53186
            O: (262) 548-1340
            F: (262) 548-9211
            E: rbitar@ammr.net
               llogic@ammr.net